FILED'08 AUG 26 17:28USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| BEVERLY ANN DAVIS, | ) | CV 07-6210-KI |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

Kathryn Tassinari
Drew L. Johnson, P.C.
1700 Valley River Drive, First Floor
Eugene, OR 97401

    Attorney for Plaintiff

Karin J. Immergut
United States Attorney
Brittania I. Hobbs
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204

1 - OPINION AND ORDER

Daphne Banay
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104

    Attorneys for Defendant

KING, District Judge:

Plaintiff Beverly Ann Davis brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I affirm the decision of the Commissioner.

## BACKGROUND

Davis filed applications for DIB on August 31, 2004, alleging disability as of January 9, 2003. The applications were denied initially and upon reconsideration. After a timely request for a hearing, Davis, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on February 15, 2007.

On March 23, 2007, the ALJ issued a decision finding that Davis was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or

2 - OPINION AND ORDER

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

3 - OPINION AND ORDER

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

4 - OPINION AND ORDER

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

## FACTS

### I.   Davis's History

Davis was 50 years old at the time of the hearing, with a high school degree and one year of college. She has worked as a food assembler, a commercial institutional cleaner, and a foster parent.

On January 9, 2003, Davis suffered a back and hip injury while working as a custodian. She went to the emergency room the following day. On January 13, 2003, her family physician, Michael Thompson, M.D., diagnosed Davis with acute onset of left lower back pain with radiculopathy suggestive of root impingement at L4. Both x-rays and MRI of the lumbar spine, however, showed only minimal narrowing of the L5-S1 interspace with no other abnormalities. In February 2003, Dr. Thompson thought Davis suffered from a significant lower back strain and instructed her to attend physical therapy, take Flexeril and Percocet, and not to work.

Dr. Thompson referred Davis to Allen Goodwin, M.D., who thought on March 12, 2003 that Davis might have experienced a lumbar strain, with a likelihood of a painful disc at L5-S1. He recommended physical therapy.

Dr. Thompson believed Davis was still unable to return to work on March 19, 2003.

In April 2003, reports from physical therapy showed only slight improvement. Dr. Goodwin indicated he intended to talk to the physical therapist. He noted,

> The patient's symptoms today seem to be somewhat exaggerated considering my understanding of her injury and the findings on the MRI, although a disc can be quite painful. She does have disc desiccation and narrowing at L5-S1 which is pre-existing but likely combined with her injury. She has not been able to participate fully with physical therapy, and I am going to try to talk to the physical therapist about her actual participation level. On today's examination there is some question of effort.
>
> . . .
>
> I feel, at least at this point, that she can return to work at some level and we will start her back on light duty. She does protest and states that she cannot do that, but I feel she needs to start returning to work.

Tr. 169. Dr. Goodwin released plaintiff to light work, where she was permitted to lift less than 10 pounds, to stand or walk a total of four hours, to stand or walk only one hour at a time, to sit a total of six hours, and to sit only one hour at a time.

On May 27, 2003, Davis obtained a lumbar transforaminal epidural block with steroid injection at the left S1 level.

On June 11, 2003, Davis reported a week of improvement after the injection, but the pain had returned. Dr. Goodwin offered another injection and, if that did not work, a discogram would be necessary. He wrote, "At this point, I do not feel the patient is medically stationary and continues to have some impairment." Tr. 163. Nevertheless, he stated that she could work at the light duty level.

Dejan Dordevich, M.D., an orthopedic rheumatologist, and Paul Williams, M.D., a neurosurgeon, examined Davis on July 1, 2003 and provided an independent medical evaluation. They opined that the MRI evidence of bulging disc at L5-S1 was normal for an individual

6 - OPINION AND ORDER

Davis's age. They found no left hip bursitis. They concluded that she had suffered only a "pulled muscle in her back" from the work incident. Tr. 187. They believed her low back pain was "psychosocial [in] nature," and that she could have worked within one to two weeks of the incident. Id. They noted "[s]ignificant inconsistencies on the examination. Give away, Waddell's, and Marxer's tests were positive." Tr. 188. They felt she could "certainly" return to work. Tr. 189.

On July 3, 2003, Dr. Thompson thought a discogram was a good idea, and wrote, "I do not feel that there is secondary gain in attempt and I do think that her symptoms are quite real." Tr. 279. He was later concerned about the independent medical evaluation, and wrote

> I have known this young woman for at least twenty years and appreciate that she is a straightforward and honest individual. I do not think that she has secondary gain as a means of continuing her distress. I feel that her pain is very real and is a physical problem. She certainly does have some secondary emotional aspects to the concern, which would be appropriate for being in pain for the last six months.

Tr. 276.

Andrew Kokkino, M.D., a neurologist, examined Davis and indicated the MRI was "very good looking" and revealed, "if anything, the most minimal of disc bulges at L5-S1." Tr. 195. He stated he had "no anatomic correlate" for her lower back and left leg pain.

Dr. Thompson first thought Davis might be suffering from diffuse myalgia on July 29, 2003. At that time, he also mentioned that Davis had "perhaps some degree of depression related" to her on-the-job injury. Tr. 273. He did not think she could return to work as a custodian.

In response to SAIF, Dr. Thompson concluded on August 4, 2003 that Davis's back condition was "medically stationary without impairment as of July 1, 2003." Tr. 268. He

7 - OPINION AND ORDER

reported to SAIF that Davis could return to work with some modifications. He concluded that she could only sit for four hours at a time, could not push or pull with her hands, could not stoop, bend, crouch, crawl, kneel, twist, climb or balance, and could only occasionally reach and push or pull.

On August 25, 2003, he stated Davis's "affect is actually a little better than before although still slightly depressed affect." Tr. 264.

In September 2003, Donna Morgan, M.D., evaluated Davis's experience with pain. She reported that Davis complained of excessive worries, but did not report symptoms of depression, anxiety, anhedonia, suicidal hallucinations, panic attacks or confusion.

In November 2003, Dr. Thompson described a "mild degree of depression." Tr. 257.

Again, in January 2004, Dr. Thompson noted Davis was taking 20 mg of Lexapro a day for "modest depression" and described Davis as "discouraged, somewhat depressed." Tr. 254, 251. In May, 2004, Dr. Thompson suggested Davis was developing fibromyalgia or possibly polymyalgia rheumatica. He grew more concerned about Davis, and on June 21, 2004 he assessed her as "clinically depressed," recommending her for counseling at South Lane Mental Health. Tr. 236. In addition, he speculated, "I suspect that her year of really not doing much physically has contributed to her current depression and what I would now call fibromyalgia." Tr. 235.

Davis has a history of depression and anxiety. She was hospitalized twice when she was around 30, almost 20 years before her application for DIB. Her symptoms were subsequently controlled by medication.

8 - OPINION AND ORDER

Dr. Thompson concluded on August 9, 2005 that Davis suffered from a lower back muscle strain, subsequent progression of fibromyalgia, and depression, and stated that Davis "is not capable of doing gainful employment at this time." Tr. 331.

II.     The ALJ's Decision

The ALJ found Davis had sufficient quarters of coverage to remain insured through June 30, 2003.

The ALJ found that plaintiff had a physical impairment considered severe within the meaning of 20 C.F.R. § 404.1520(b). Specifically, he found she suffered from the severe impairments of lower back strain, obesity, and fibromyalgia, as the working diagnosis by elimination. However, the ALJ did not find that this impairment met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ found that Davis had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. She could stand, walk and sit six hours in an eight-hour day. She could only stoop and crouch occasionally.

Based on this residual functional capacity, and the testimony of the vocational expert ("VE"), the ALJ concluded that Davis could perform her past relevant work as a food assembler as generally described in the DOT, not as actually performed at the medium exertion level. Alternatively, the ALJ found Davis could do the following work: cashier II, photo copy machine operator, and electronics worker. Accordingly, the ALJ found that plaintiff was not under a "disability" within the meaning of the Social Security Act, at any time through her date last insured.

9 - OPINION AND ORDER

## DISCUSSION

I. <u>Severity of Davis's Depression</u>

The ALJ found that plaintiff's "[d]epression and anxiety disorders were not determinable 'severe' impairments during the relevant adjudicative period from January 9, 2003 to June 30, 2003." Tr. 19. Plaintiff claims her depression was severe prior to her date last insured.

It is plaintiff's burden to establish that she suffers from a "disability" under the Act, which is defined in part to be a "medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An impairment or a combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996).

Plaintiff argues that her complaints were described by the independent medical examiners on July 1, 2003 to be "psychosocial [in] nature," which was only one day after her date last insured. Tr. 187. Two days after that, Dr. Thompson noted plaintiff had a "somewhat muted" affect during her examination. Tr. 278. On July 15, 2003, Dr. Thompson explained to SAIF that Davis "does have some secondary emotional aspects to the concern, which would be appropriate for being in pain for the last six months." Tr. 276.

The ALJ discussed plaintiff's history with depression, and that she had controlled it with medication. She had been a foster parent until 2000, caring for up to eleven children plus her own two children at one point. She returned to work full-time as a custodian in 2000, and

10 - OPINION AND ORDER

worked for three years until she experienced her on-the-job injury. She successfully treated her depression throughout those years. In addition, the ALJ noted that Dr. Thompson "meticulously detailed" plaintiff's mental and physical ailments, and indicated only that her affect was somewhat muted on July 3, 2003, and that her physical condition had an emotional aspect to it. Tr. 18. He did not increase her medication and he did not recommend counseling. On July 29, 2003, he reported "some degree of depression," but again did not change her medication or recommend counseling. On August 25, 2003, two months after her date last insured, Dr. Thompson noted her "affect is actually a little better than before although still slightly depressed affect." Tr. 264. On January 16, 2004, again, he reported plaintiff as suffering from "modest depression" and "somewhat depressed." Tr. 251, 254. It was not until June 2004, a year after Davis's date last insured, that Dr. Thompson concluded plaintiff was "clinically depressed" and noting his suspicion that a "year of really not doing much physically" contributed to the depression. Tr. 235, 236.

As summarized above, the evidence supports the ALJ's conclusion that Davis's depression during the relevant time was not a condition "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). Indeed, Dr. Thompson's opinion to SAIF on August 4, 2003 was that Davis could return to work with some modifications.

Davis has not met her burden of proving her depression was a severe impairment.

II.   Onset Date

Plaintiff suggests "adequate contemporaneous medical evidence" was not available to prove the onset date of her disability, and asserts that the ALJ should have called a medical

advisor to assist in determinating plaintiff's onset date of disability. Pl.'s Br. in Supp. of Complaint at 17. Plaintiff relies on the following Social Security Ruling:

> The available medical evidence should be considered in view of the nature of the impairment (i.e. what medical presumptions can reasonably be made about the course of the condition). The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

SSR 83-20.

The ALJ had no obligation to call a medical expert. The detailed medical reports at the time provided a sufficient basis for the ALJ to conclude Davis was not disabled prior to her date last insured. Furthermore, "[b]ecause the ALJ found that [Davis] could have returned to [her] prior work and was not disabled, the judge needed no medical expert to determine the onset date of the alleged disability." Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996).

III.   Plaintiff's Credibility

Plaintiff testified that she went to physical therapy for her hip. Four or five months after the on-the-job injury, she began to experience heaviness in her arms and legs, shakiness, headaches, and had difficulty remembering things. Plaintiff asserts that the ALJ failed to address her testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen, 80 F.3d at 1281-82. The claimant is not required to produce objective medical evidence

12 - OPINION AND ORDER

of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

Davis is correct that the ALJ nowhere indicates specifically that he rejects her testimony, but there is no need to recite "magic words." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). The ALJ's credibility findings are "sufficiently specific to permit" this court "to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ recites the medical evidence which showed Davis's on-the-job injury was stationary as of July 1, 2003, and that there was "no anatomic correlate" for plaintiff's low back and left leg symptoms. Tr. 20, 195. Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In addition, the ALJ noted Dr. Goodwin's concern about whether Davis was putting forth the required effort on physical therapy. He intended to talk with the physical therapist about

13 - OPINION AND ORDER

Davis's participation level. The ALJ also pointed out the "multiple inconsistencies" she exhibited during the independent medical examination. Lack of cooperation during an evaluation and efforts to impede accurate testing of limitations are valid reasons to find that a claimant lacks credibility. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Finally, Dr. Goodwin released Davis to work at the light exertion level, Dr. Dordevich and Dr. Williams opined that plaintiff had been able to return to work within one to two weeks after the on-the-job accident, and "certainly" could return to work as of the date of their exam on July 1, 2003, and Dr. Thompson concluded on August 4, 2003 that Davis could return to work with some modifications. An ALJ may discredit a claimant's subjective complaints based on a doctor's opinion that she is able to work. Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

In sum, the ALJ provided clear and convincing evidence for rejecting the subjective testimony of Davis.

IV.     Medical Opinions

Plaintiff argues that the ALJ should have credited Dr. Thompson's opinion as a matter of law. She claims that Dr. Thompson found plaintiff unable to work as a custodian as of July 31, 2003, and that his letter of August 9, 2005 opining that plaintiff was "significantly disabled" is consistent with that earlier opinion. Plaintiff argues that there is no medical evidence disputing Dr. Thompson's opinion, and his conclusion of disability should be credited as a matter of law.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician

14 - OPINION AND ORDER

because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ provided clear and convincing reasons for rejecting Dr. Thompson's August 9, 2005 opinion that Davis was incapable of working "at this time." Tr. 21, 331. The letter was specifically limited to a time period well after Davis's date last insured. In addition, just after Davis's date last insured, Dr. Thompson stated that Davis could return to work with some modifications. Furthermore, the ALJ pointed out Dr. Thompson's inconsistent diagnoses, suggesting that her back strain had resolved in 2003, but then diagnosing a lower back strain in 2005. Id., 169 F.3d at 603 (ALJ may reject doctor's opinion based on inconsistencies).

/ / /

/ / /

/ / /

/ / /

/ / /

15 - OPINION AND ORDER

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

DATED this _16_ day of _Aug_, 2008.

_____
Garr M. King
United States District Judge